Totten, J.,
delivered the opinion of the court.
The action is trover, in the circuit court of Carroll, by *438 Samuel P. Turbeville and others against Timothy Barham, for the conversion of a negro slave, to which the plaintiffs claim title. At September term, 1851, of said court, there was judgment for the plaintiffs for $693, and the defendant appealed in error to this court.
It appears, that in 1849, the defendant, Barham, purchased said slave of Ansel H. Turbeville, the father of the plaintiffs, and under him, claims absolute title and ownership.
But it is very clear, that Ansel H. Turbeville, the father, had no title. The title was in his children, derived by them from a third person, that is, from their maternal ancestor, Elizabeth McKinney, sometime about 1840, in the State of Louisiana, where the Turbeville family then resided. By order of the Probate court of the Parish of Baton Rouge, in June, 1840, the said Ansel was appointed tutor to his said children, and from that time forward held possession of their slaves so derived, the slave in question being one of them.
In 1843, he, with his children and said slaves, removed from Louisiana to Tennessee, first to the county of Henry, and then, in the early part of 1844, to Carroll, where, in 1849, he sold the slave in question, to defendant Barham. The said Ansel spoke of the slaves and used them as his own, and it seems, that they were generally so considered; though there were some intimations, that the title was in his children.
In June 1849, the said Ansel died, and afterwards, in December, his children instituted this suit.
At the time of said sale to Barham, Samuel F., one of the plaintiffs, was about twenty years of age — the other children were under that age.
The defendant offered to prove at the trial, by Thomas, a witness, that when the slave was sold to defendant, two of the plaintiffs, Samuel and another, knew of their title and concealed it from defendant,--that they stated to defendant that *439 their father’s title was yalid, and that they had no title, — that they encouraged defendant to buy, and consented to the sale.
This evidence being objected to, was ruled out by the court and the question to be decided is, — was it legally competent ?
It is very clear, that in the view of a court of equity, evidence of this kind would be deemed competent.
For, if a man having title to an estate which is offered for sale, and knowing his title, stands by and encourages the sale, and thereby another person is induced to purchase the estate, under the impression that the title is good; the former, so acting, will be bound by the sale; and neither he nor his privies, will be at liberty to dispute the validity of the vendee’s title. Stoors vs. Barker, 6 J. C. R. 169; Wendell vs. Van Renselear, 1 J. C. R, 354; 1 Story Eq. Jur. § 385.
This doctrine, indeed, goes still further, and demands that the true owner shall speak out, and forbid the sale. But the case we have supposed, is one of positive and actual fraud, — and in such case, neither infancy nor coverture will constitute any excuse for the guilty party — “for neither infants nor femes covert are privileged to practice deception or cheats upon other innocent persons.” 1 Story Eq. Juris. § 385; Nicholson vs. Hooper, 4 Mylne & Craig, 172; Pickard vs. Sears, 6 Adol. & Ellis, 474. So, in Sugden, on Vendors, 262, margin, it is said, if a person having a right to an estate, permit or encourage a purchaser to buy it of another, the' purchaser shall hold it against the person who has the right, although covert or under age.
Now, does this doctrine apply in an action for personal property in a court of law?
A person may be estopped by matter in pais, as well as by record and by deed. 4 Com. Dig. Estoppel; 2 Phil. on Ev.; C. & H. note 192.
In Pickard vs. Sears, 6 Adol. & Ellis, 474, which was trover for machinery and other articles, it appeared that the plain *440 tiff had the legal title, but gave no notice of his claim, at the time the defendant became the purchaser, though present and informed that the goods were to be sold. It was held, that the plaintiff was not entitled to recover. In this case, Lord Den-man, C. J., delivering the opinion of the court, said: “The rule of law is clear, that, where one by words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter, a different state of things as existing at the same time.” That is, the party making the admission, is in such case, estopped from disputing the fact admitted.
In Horne vs. Rogers, 9 Barn. & Cres. 576, which was an action of trover, the same principle is stated and recognized.
So, upon the same principle, it was held, that the acceptor of a bill, cannot set up as a defence, that the name of the drawer was forged; because the bill obtained currency and credit on the faith of his acceptance. Sanderson vs. Collman, 4 Man. & Grainger R. 209.
So, a tenant shall not be permitted to dispute the title of the person under whom he entered, — and in an action against him to recover the possession, the plaintiff shall recover in virtue of the estoppel merely.
The same principle is conceded and illustrated in many other cases. Watson vs. Waer, 5 Barn. & Cres. 153, Langford vs. Foot, 2 Moore & Scott, 349; Mace vs. Codell, Cowper 232; Bathews vs. Galindo, 1 Moore & Payne 565.
In view of these authorities, as well as upon principle, it seems to us, that in cases of actual fraud the principle of es-toppel should apply at law as well as in equity, in the circumstances before stated, to protect the title of an innocent purchaser against the action of the party, who perpetrated the fraud.
*441 This rule, as we have seen, applies to infants as well as to adults, — for infancy is no privilege to perpetrate frauds upon the rights of innocent persons, with impunity.
But to hold the infant bound by his act or admission, it should appear to be a case of actual and positive fraud, committed by some unequivocal act, and not merely inferred by his silence or acquiescence. It should also appear that he had full knowledge of his rights, and was not in a state of ignorance or misapprehension in regard to them, — and that he possessed such discretion and intelligence as to enable him to comprehend the import and effect of his conduct in reference to his rights, as in the case of adults.
These are, indeed, necessary elements of the actual and positive fraud, by which he may be precluded and estopped' from asserting a right to the prejudice of an innocent purchaser, who has been influenced by his conduct.
Now, to apply this principle to the case before us; it will be seen, that the evidence is competent, so far as it has a tendency to make out a case of actual and positive fraud, — as before stated.
The judgment of the circuit court will be reversed, and the cause remanded for a new trial.