McKinney J.,
delivered the opinion of the Court.
In the year 1856, the personal representative of the estate of William Duncan, deceased, in pursuance of a power in him vested by the will of the testator, sold certain slaves belonging to the estate, at public auction.
By the terms of sale, which were publicly announced at the time, a credit of twelve months was to be allowed, the purchasers giving bond with approved security; and it was further stated, that a lien would be retained upon the slaves sold, until the purchase money should be paid.
One Oldham became the purchaser of a negro man named “Dock,” at said sale, at the price of $1053.00, for which he executed an obligation, with the complainant as his surety; and, thereupon, the slave was delivered into the possession of Oldham. No bill of sale was executed by the executor, to Oldham, nor does it appear that any such thing was thought of, or deemed necessary, by the parties. There was no reservation of the title to the slave; on the contrary, it is manifest from the proof, that it was the intention and understanding, on all hands, that both the right of property and possession should pass immediately to the purchaser; nothing more being contemplated by the reservation than a naked lien; and even of this, there was no notice in the written terms of sale, as set forth in the advertisement, nor in the obligation taken for the purchase money, it rested merely in parol. -
It appears that on the 18th of November, 1857, suit was brought upon the obligation for the price of the the slave “Dock,” against Oldham and complainant. *206 Judgment was obtained thereon on the 29th of March, 1858, and said judgment was satisfied by the complainant, Woods, on the 17th of July, 1858, as the surety of Oldham.
It further appears, that a few days after the institution of said suit against Oldham and the complainant, to-wit: On the 24th of November, 1857, the defendants, who were creditors of Oldham, filed an attachment bill against him, whereon process of attachment was awarded by the Ceancellor; and, on the same day, they caused their attachment to be levied on the slave “Dock,” together with other property of the said Oldham’s.
The complainant, thereupon, filed this bill to enjoin the defendants from proceeding to subject said slave “ Dock” to the satisfaction of their debt. The supposed equity of the bill is grounded upon the assumption, that the personal representative of Duncan retained a valid lien upon the slave to secure the payment of the purchase money; and complainant having been compelled to discharge the debt, as surety of the purchaser, is entitled to be substituted to the lien; and that, as against this equity, the defendants attachment is inoperative.
The Chancellor so decreed; and the defendants appealed.
The question is, can the decree be maintained? We think not. We take it to be too clear to admit of discussion, that the doctrine of an implied lien, in equity, in favor of the vendor of real estate (where the legal title has been conveyed to the vendee) to secure the unpaid purchase money, and no personal security has been given, has no application to sales of personal property : That, as respects the latter species of property, *207 no lien exists by implication of law; and in no other mode can a valid lien be created in favor of the seller of a personal chattel, where' the legal title and possession have been parted with, than by express contract, which, at least, as against creditors and subsequent purchasers without notice, must be in writing, and duly proved and registered. We do not controvert the principle laid down in Gambling v. Read, Meig’s R., 281. That case establishes, that, on a verbal sale of a slave, though possession be delivered to the purchaser, an agreement between the parties at the time, that the right of property, or title, shall remain in the seller, as security for the purchase money, is valid; and that in such case, the payment of the money is a condition precedent to the passing of the right of property to the purchaser, and that such agreement is valid without registration, not falling within the description of any agreement required by our law to be registered. The same principle is recognized in Houston v. Dyche, Meig’s R., 76, and other subsequent cases. But these cases are wholly unlike the one under consideration. They rest upon the simple fact that the right of property was never parted with by the owner, but by express contract was retained to secure the purchase money; the sale was only conditional. But, in the case before us, the sale was absolute and complete, and personal security taken for the purchase money. The sale was made under a power created by the will of the testator. No bill of sale, or other written evidence, was at all necessary to transfer the title to the purchaser. The verbal sale, accompanied by delivery, without any reservation of title, *208 ■was as operative to pass the title to the purchaser, as would have been a hill of sale.
This principle is established by repeated decisions of this Court. 5 Yer., 282; 10 Yer., 507.
In this view it is clear, that no lien existed in favor of Duncan’s representative; and, therefore, there is nothing to which the complainant can be substituted. The decree will be reversed, and the bill be dismissed, but without costs.