## HALL & a. *v.* BUTTERFIELD.

An infant who purchases goods on credit, and does not return them, is liable for so much of the price as is equal to the benefit derived by him from the purchase.

The question of the amount of benefit received by the infant is one of mixed law and fact, to be found by the tribunal trying the facts.

ASSUMPSIT, to recover for goods sold and delivered. The defendant pleaded infancy, and the question was reserved whether that was a bar to the plaintiffs' recovery. The defendant was engaged in trade, and the goods were purchased by him for the purposes of trade, and were not necessaries within the ordinary meaning of that term.

*Albin & Streeter* and *Rand*, for the plaintiffs.

*Mugridge*, for the defendant, contended that the contract was voidable at the election of the defendant, and that nothing was necessary to be done by him as a prerequisite to avoidance,—citing and commenting on *Heath* v. *West*, 28 N. H. 101; *Fitts* v. *Hall*, 9 N. H. 446; *Badger* v. *Phinney*, 15 Mass. 362; *Carr* v. *Clough*, 26 N. H. 294.

STANLEY, J. The defendant interposes the plea of infancy as a bar to the plaintiffs' right to recover, and, so far as this right depends on an express contract, it is a complete answer. The express contract, on which the plaintiffs' rely, was voidable at the defendant's election, but it does not necessarily follow, because the defendant exercises his privilege to avoid the contract, that he is under no liability to the plaintiffs.

The right of infants, lunatics, persons *non compos mentis*, and drunkards, when in such a state as to be entirely deprived of reason, to avoid their contracts, is placed on the same ground. They are considered to be devoid of that freedom of will, combined with maturity of reason and judgment, essential to enable them to give the assent necessary to make a valid contract. To protect them from fraud and imposition, to which from their want of understanding and immaturity of judgment they are exposed, they are permitted to allege their want of capacity to bind themselves by contract. But this privilege is to be used as a shield, not as a sword; not to do injustice, but to prevent it. *Zouch* v. *Parsons*, 3 Burr. 1794; *Seaver* v. *Phelps*, 11 Pick. 304; *Allis* v. *Billings*, 6 Met. 415; *Hallett* v. *Oakes*, 1 Cush. 296; *Taft* v. *Pike*, 14 Vt. 405; *Lincoln* v. *Buckmaster*, 32 Vt. 652; *Matter of Barker*, 2 Johns Ch. 233; *Sanford* v. *Sanford*, 62 N. Y. 553, 557; *Squier* v. *Hydliff*, 9 Mich. 274; *Spicer* v. *Earl*, 41 Mich. 191; *Allen* v. *Berryhill*, 27 Iowa 540; Benj. Sales, s. 21; 1 Pars. Cont. 293; Chit. Con. 135, 136, 141; 1 Fonbl., B. 1, c. 2, s. 4; Bing. Inf. 63; Ewell L. C. 588.

But while the disabilities of these different classes of persons and the reasons on which they are placed are the same, and they equally require protection, the application of the principles of law governing their rights and liabilities and their status has been widely different, and has undergone marked changes from time to time. Under the ancient common law, lunatics were allowed to show their lunacy in defence of their alleged contracts (2 Bl. Com. 291); but later, in the times of Edward III, " a scruple began to arise whether a man should be permitted to blemish himself by pleading his own insanity. Under Henry VI this way of reasoning   *   *   *   was seriously adopted by the judges   *   *   *, and from these loose authorities, which Fitzherbert does not scruple to reject as being contrary to reason, the maxim that a man shall not stultify himself hath been handed down as settled law." 2 Bl. Com. 291, 292; Bac. Abr., Idiots & Lunatics, F. The reason assigned for this maxim was, that a man cannot know in his sanity what he did when he was insane *(Stroud* v. *Marshall*, Cro. Eliz. 398; *Cross* v. *Andrews*, Cro. Eliz. 622); or, as stated by Littleton, " no man of full age shall be received in any plea by the law to disable his own person." Co. Litt., B. 3, 247 *b*. That such a doctrine ever could have been held to be law seems incredible, for, to use the language of *Wilmot, J.*, it does seem to be very unaccountable that a man should be at liberty to avoid his own acts caused by the duress of man, and not those caused by the duress of Heaven. Wilm. Op. 155; 5 Bac. Abr. (Bouv. ed.) 26. " How so absurd and mischievous a maxim could have found its way into any system of jurisprudence, professing to act upon civilized beings, is a matter of wonder and humiliation. There have been many struggles against it by eminent lawyers in all ages of

the common law; but it is, perhaps, somewhat difficult to resist the authorities which assert its establishment in the fundamentals of the common law—a circumstance which may well abate the boast, so often and so rashly made, that the common law is the perfection of human reason." Story Eq., *s.* 225. But this doctrine has been exploded as manifestly against natural justice (2 Kent Com. 451), and it has been finally considered, in this and other jurisdictions, that lunatics and persons *non compos mentis* may show their incapacity as a defence to their contracts. Indeed, this doctrine seems now well established in this country. *Lang* v. *Whidden*, 2 N. H. 435; *Burke* v. *Allen*, 29 N. H. 106; *Mitchell* v. *Kingman*, 5 Pick. 431; *Rice* v. *Peet*, 15 Johns. 503; 5 Bac. Abr. (Bouv. ed.) 26; 2 Kent Com. 451, 452, and notes and authorities *passim.*

Again: it was formerly held that the contracts of lunatics and persons *non compos mentis* were absolutely void (*Thompson* v. *Leach*, 3 Mod. 301; *Gore* v. *Gibson*, 13 Mee. & W. 623; Chit. Con. 24, 139); but this has been seriously questioned, and it is now held that they are voidable only (*Wait* v. *Maxwell*, 5 Pick. 217; *Allis* v. *Billings*, 6 Met. 415—*S. C.*, 2 Cush. 19; *Ingraham* v. *Baldwin*, 9 N. Y. 45; Met. Con. 80; Pars. N. & B. 151; 2 Hill, R. P. 408, *s.* 16); and that where a contract is entered into in good faith with a lunatic or a person *non compos mentis*, and is for the benefit of such person, courts of law, as well as equity, will uphold it. *Mc-Crillis* v. *Bartlett*, 8 N. H. 569; *Young* v. *Stevens*, 48 N. H. 133; *Mut. Life Ins. Co.* v. *Hunt*, 79 N. Y. 541; *Hallett* v. *Oakes*, 1 Cush. 296; *Molton* v. *Camroux*, 2 Welsby H. & G. 487—*S. C.*, 4 Welsby H. & G. 17; *Elliot* v. *Ince*, 7 De G. M. & G. 475; *Baxter* v. *Earl of Portsmouth*, 5 Barn. & C. 170; *Niell* v. *Morley*, 9 Ves., Jr., 478; *Brown* v. *Jodrell*, 3 Car. & P. 30; *Gore* v. *Gibson, supra;* 1 Pars. Con. 386; Benj. Sales, *s.* 29; Story Eq., *s.* 228. Greenleaf states the doctrine thus: Where goods have been supplied to a party which were necessaries, or were suitable to his or her station or employment in life, and which were furnished under circumstances evincing that no advantage of his or her mental infirmity was attempted to be taken, and which have been enjoyed by such party, then he or she is liable at law, as well as in equity, for the value of the goods. 2 Gr. Ev., *s.* 369; *Kendall* v. *May*, 10 Allen 62.

From this brief review, it is seen that there has been a change in the law relating to the rights and liabilities of lunatics and persons *non compos mentis*, from absolute liability upon all contracts to no liability upon any contract, and from that to a liability limited by the benefit received. This latter doctrine places their rights and liabilities upon broader, more rational and just grounds than they have ever been before, for it regards the rights of both parties,—treats both parties to the contract as equally under the protection of the law,—the lunatic and the person *non compos mentis*, by allowing them to rescind their contracts, accounting for the

benefit received from it; the other party, by allowing him to recover to the extent of the benefit received by the lunatic.

The privilege accorded to infants to avoid their contracts rests on the same ground as that accorded to lunatics and persons *non compos mentis*,—protection against fraud to which by reason of their immaturity of judgment they are liable. So far as relates to their contracts, these different classes of persons are said to be parallel, both in law and reason. *Seaver* v. *Phelps*, 11 Pick. 304; *Breckenridge's Heirs* v. *Ormsby*, 1 J. J. Marsh. 236; *Thompson* v. *Leach*, 3 Mod. 301; 1 Pars. Con. 293; Story Eq., *ss.* 223, 224, 242, and authorities *passim*. But the principles applicable to their contracts have not been the same, and even with regard to the contracts of infants the law has been materially changed. Until the decision in *Zouch* v. *Parsons*, 3 Burr. 1794, none of the contracts of minors were enforceable. They were all either void or voidable. Bac. Abr., Infant I, 3; Com. Dig., Enfant B, 5; *Lloyde* v. *Gregory*, Cro. Car. 502. But in *Zouch* v. *Parsons*, *supra*, it was held that infants were liable on their contracts for necessaries on the ground of necessity, and because they were of benefit to the infant. Lord *Mansfield* said, page 1801, " Great inconveniences must arise to others if infants were bound by no act. The law, therefore, at the same time that it protects their imbecility and indiscretion from injury through their own imprudence, enables them to do binding acts for their benefit   *   *   *   *.   A third rule, deducible from the nature of the privilege that is given as a shield and not as a sword, is, that it never shall be turned into an offensive weapon of fraud or injustice   *   *   *.   The end of the privilege is to protect infants. To that object, therefore, all the rules and their exceptions must be directed." In *Drury* v. *Drury*, cited in *Maddon* v. *White*, 2 T. R. 159, Lord *Mansfield* laid it down as a general principle, that if an agreement be for the benefit of an infant at the time, it shall bind him; and *Buller, J.*, said Lord *Hardwicke* afterwards adopted this rule. But this broad principle announced by Lord *Mansfield*, and which seems so just and wise, and which secures to infants all the protection necessary to save them from the consequences of immaturity of judgment and understanding, has been limited so that under it they have only been held liable, upon an implied contract, for necessaries, such as necessary meat, drink, apparel, medicine, and instruction, and, if married, provision for wife and children. Bing. Inf. 87. Recently the term has been extended to include counsel fees, in cases involving their liberty. *Barker* v. *Hibbard*, 54 N. H. 539; *McCrillis* v. *Bartlett*, 8 N. H. 569. Formerly it was held by some authorities that they could not be allowed to rescind their contracts in regard to either personal or real property until after coming of age; but this has been modified, so that, as to their contracts in regard to personal property, they may rescind as well before as after. *Carr* v. *Clough*, 26 N. H. 289, 291; *Roof* v. *Stafford*, 7

Cow. 179; *Stafford* v. *Roof*, 9 Cow. 626; *Zouch* v. *Parsons, supra.*
So they were formerly allowed to rescind, and recover what they
had paid on their contracts without restoring what they had receiv-
ed.    But this has been changed, and it is now held that they can-
not rescind without restoring or offering to restore the considera-
tion, if remaining *in specie*, and in the possession or control of the
infant and capable of return; and in some jurisdictions it is now
held, that where the consideration cannot be restored, the infant,
before he can be allowed to rescind, must place the adult in as good
condition as though he had returned the consideration, or he must
account for the value of it.    *Carr* v. *Clough, supra; Heath* v. *West,*
28. N. H. 101, 110; *Locke* v. *Smith*, 41 N. H. 346, 353; *Young* v.
*Stevens*, 48 N. H. 133, 137; *Heath* v. *Stevens*, 48 N. H. 251; *Kim-
ball* v. *Bruce*, 58. N. H. 327; *Price* v. *Furman*, 27 Vt. 268; *Badg-
er* v. *Phinney*, 15 Mass. 359; *Riley* v. *Mallory*, 33 Conn. 201,
207; Ewell L. C. 123, 125; 2 Kent Com. 236, 240; Benj. Sales,
*s.* 27, *note.*    This is especially the case in contracts for services,
where the infant seeks to avoid his contract and recover what his
services are reasonably worth; and this allows the adult to set off
against the value of the plaintiff's services the reasonable value of
what the infant has received on account of such services; or, in
other words, the infant is entitled to recover for the benefit which
the adult has derived from the services performed by him.    *Luf-
kin.* v. *Mayall*, 25 N. H. 82; *Locke* v. *Smith, supra; M'Crillis* v.
*How*, 3 N. H. 348; *Vent* v. *Osgood*, 19 Pick. 572; *Stone* v. *Den-
nison*, 13 Pick. 1; *Breed* v. *Judd*, 1 Gray 455; *Gaffney* v. *Hayden,*
110 Mass. 137; *Hoxie* v. *Lincoln*, 25 Vt. 206; *Harney* v. *Owen*, 4
Blackf. 337; *Squier* v. *Hydliff*, 9 Mich. 274; *Spicer* v. *Earl*, 41
Mich. 191; *Whitmarsh* v. *Hall*, 3 Den. 375; *Makarell* v. *Bachelor,*
Cro. Eliz. 583; *Ive* v. *Chester*, Cro. Jac. 560; Ewell L. C. 109.

Again: as has been shown, infants were formerly held liable on
their contracts for necessaries; but it is now held that they are
liable, not by virtue of any contract, but on the ground of an im-
plied legal liability based on the necessity of the situation.    Bing.
Inf., Bennett's notes, 87.

It is apparent that the tendency of the later decisions is to en-
large the liabilities and obligations of infants; and, while the liabil-
ity has not in their case been extended so far as it has in regard to
lunatics and persons *non compos mentis*, the principle on which
it rests is the same.    The grants of infants and persons *non compos*
are parallel, both in law and reason.    *Thompson* v. *Leach*, 3 Mod.
301; *Seaver* v. *Phelps*, 11 Pick. 304; *Breckenridge's Heirs* v.
*Ormsby, supra.*    In view of these facts, no reason appears why the
wise and just principle enunciated by Lord *Mansfield* should not
be given its full force, and the rights and obligations of lunatics,
persons *non compos mentis*, drunkards when in such a state as to
be entirely bereft of reason, and infants be placed on the same
ground.    The obligation to account only for the benefit actually

received secures ample protection from fraud and imposition, and at the same time prevents the privilege from being used to perpetrate fraud. It prevents their disability from being "not their protection merely, but an extraordinary legal ability *to rob others;* not a shield, but a sword; not a mere legal incapacity to be plundered by their fellow-men, but a vast capacity to plunder them with impunity."

The right to recover for necessaries is given, because the infant has derived a benefit therefrom. It is upon no other ground. If the benefit is the foundation of the right, why should it be limited to necessaries? It cannot be said that the infant, if engaged in trade or business, may not derive a benefit therefrom. If benefit obtained by the infant is the test in one case, why not make it the test in all cases? This has been made the test in the case of lunatics and persons *non compos mentis,* and it should be applied in the case of infants. The true rule is, that the contract of an infant or lunatic, whether executed or executory, cannot be rescinded or avoided without restoring to the other party the consideration received, or allowing him to recover compensation for all the benefit conferred upon the party seeking to avoid the contract. The question whether the infant has received a benefit,—like the question of what are necessaries, and what sum the infant ought to pay for them, or the question of negligence or ordinary care, and other similar questions,—is one of mixed law and fact. No uniform rule can be established. A contract, which under some circumstances to one person might be beneficial, under others and to another might be injurious. In no two cases are we likely to find the same facts; and it must always be for the trier to apply the law to the facts, and determine whether the infant has been benefited, and to what extent. Bing. Inf., Bennett's notes, 88.

Our conclusion is, that the plea of infancy is not a bar to the plaintiffs' recovery, but that they may recover to the extent of the benefit received by the defendant, not exceeding the price he agreed to pay for the goods.

*Case discharged.*

BINGHAM, J., did not sit: the others concurred.