Sautelle *v.* Carlisle.

EUGENIE SAUTELLE *v.* LOUISA CARLISLE *et al.*

.1. ESTOPPEL. *Married women and minors. Femes covert* and minors cannot be estopped by refusing to abide by a void agreement which none of them were competent to make, there being no fraud or deceit; mere acquiesence, under disability, cannot affect them.

2. STATUTE OF LIMITATION. *Remaindermen.* Seven years is required to complete the bar of the statute against remaindermen, after the termination of the life estate, even when the adverse occupant is claiming the fee pending the life estate.

3. VOID SALES. *Return of purchase money.* Purchase money received upon a void sale of land is treated as an equity attaching to the land, and a subsequent purchaser, with notice, takes it subject thereto.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

D. M. SCALES, W. M. RANDOLPH and SMITH & COLLIER for complainants.

C. F. VANCE, H. CRAFT, I. G. HARRIS and R. W. BETTS for defendants.

COOKE, Sp. J., delivered the opinion of the court.

Charles E. Rienhardt died testate in Shelby county, in 1847. He left surviving him a widow and eight children—seven daughters and a son, whose names were as follows, four of said daughters being then married, to-wit: Susan A. Wills (now Vaughn), Martha Horsely,

Harriet C. Wray, Mary A. Kerr and Margaret L., who afterwards married one Miller, Rebecca L., who afterwards married McMillan, and Eugenie L., who afterwards married one Sautelle. The last three then being minors.

By the first clause of his will he provided for the payment of his debts, etc. The second clause was as follows: "I give and bequeath all my real and personal property of which I am possessed, to my wife, except as hereinafter specified, so long as she lives." He then, by subsequent clauses, gave to two of his daughters, Mrs. Wills and Mrs. Horsely, eight hundred dollars each, which he states they had received. He gave to Mrs. Wray a negro girl, by name, valued at $400. To Mrs. Kerr he gave a farm on Wolf river, she to pay to his estate $400. And to his son, James O. Rienhardt, his medical books, drugs and medicines, and a horse, saddle and bridle. And then by the eighth clause provided as follows: "It is my wish that my daughters who are single remain with my wife, and should they marry, that my wife assist them at discretion, keeping an account of the same; and that after her death, my daughter, Harriet C. Wray, be made equal to Susan A. Wills and Martha A. Horsely and Mary A. Kerr, that is, to the amount of $800 with what she has received; and that my daughters, Margaret L., Rebecca L. and Eugenie L. Rienhardt, be made equal also in the said amount of $800. After which an equal distribution be made amongst my daughters of the balance, except $200 to James O. Rienhardt."

He appointed his wife executrix of his will, who soon after his death proved the same and qualified as such. The debts of the estate seem to have all been paid. The widow died in August, 1870, and at her death there remained of the property of which the testator died siezed and possessed, a lot or parcel of ground containing about two acres, in the city of Memphis, extending, of a specified width, from Poplar to Adams street.

The original bills in these causes were filed to have a construction of the will and the estate administered and distributed according to its provisions, so far as the same had not been done. The chancellor was of opinion, and so decreed, that the widow took a life estate in the property, under the will, and the daughters each an equal, transmissible interest in remainder, subject to the specific legacies charged upon it. The Referees have so reported, and we think correctly, and that the authorities which they cite fully sustain this branch of their report.

Soon after the death of the testator and qualification of the executrix, by an agreement between her and all the daughters, except Mrs. Miller and Wray and wife, Wray agreed to take a certain specified portion of said lot, fronting on Adams street, in lieu of the legacy of $400 which Mrs. Wray was to receive at the death of the widow. This part of the lot was unimproved, had been a brick-yard, and was in holes and ponds of water, required a considerable expenditure to prepare it for improvement, and was worth at the time about $400. In pursuance of this

agreement, Wray and wife took possession of that portion of the lot, enclosed it with a fence, and about 1850 built a residence and other improvements upon it, and have continuously held and occupied it and claimed it adversely to the other devisees and all others to the present time. At the time of this agreement all of these daughters who were entitled in remainder, after the termination of the life estate of the widow, were either *femes covert* or minors. There was an attempt to reduce this agreement to writing, and a paper containing it was drawn up and signed by the widow, and most, if not all of the daughters, except one (Mrs. Miller), but was never either acknowledged or delivered, and has been lost. In 1854, the widow, as well as these daughters, became dissatisfied with the arrangements and refused to perfect or deliver the writing, and the widow instituted an action of ejectment against Wray to recover possession of the property, but in which she was unsuccessful.

In 1862, the widow sold and conveyed her life estate in the property to Mrs. Carlisle, who took possession of the family residence, fronting on Poplar street, and has held and occupied it ever since.

In 1862 or 1863, three of the daughters, Mrs. Wills (now Mrs. Vaughn), Mrs. Horsely and Mrs. McMillan, also conveyed their remainder interests to Mrs. Carlisle, and there is no controversy now as to her right to these interests. Mrs. Kerr, in 1863 conveyed jointly with her husband, her interest to Mrs. Carlisle, but her privy acknowledgment of the deed was defective, and the deed was therefore void. She repudiated the deed and

has since died, and her heirs now claim her interest in the estate. Mrs. Miller, also in 1863, conveyed her interest jointly with her husband, to Mrs. Carlisle, but her privy acknowledgment was defective, and the deed therefore void. In 1866, she jointly with her husband, sold and conveyed the same interest to Wray, who has subsequently conveyed it to his wife. This last conveyance of Mrs. Miller and husband to Wray, was properly acknowledged and duly registered. The consideration paid by Mrs. Carlisle for these interests was about $3,000 of Confederate money for each, and she has filed a cross-bill alleging that these conveyances to her were void for want of sufficient privy acknowledgment, and seeking to have the purchase money paid by her for the same refunded, and a lien upon these interests for the same declared and enforced.

Mrs. Miller, who has been made a respondent in all the cases, has failed to answer, and does not set up or claim any interest in the lands or estate of the testator, or seek any relief in any manner whatever. Mrs. Eugenie Sautelle died never having in any manner attempted to dispose of her interest in the estate, her heir is before the court and claims her one-seventh reversionary interest and legacy of $800 under the will, and which is not contested, under the construction we have given to the will, except as to that portion of the lot claimed by Wray and wife.

It is very earnestly insisted by Wray and wife that all of the daughters of the testator, except Mrs. Miller, who has conveyed her entire interest to him as above stated, are bound by said verbal contract

and attempted writing, as a family arrangement and
settlement, and are estopped by reason thereof and
their acquiescence, and permitting Wray to possess
and improve the same without objection; and are also
bound by the statute of limitations.

The chancellor held that neither of these positions
was tenable, and that they, or their heirs or assigns,
are still entitled to their respective interests in the
entire property. The Referees, however, have reported
upon this branch of the case, that they are estopped,
by reason of the facts and circumstances above stated,
from now setting up any claim to that portion of the
lot so held and claimed by Wray and wife, and that
their right to the same has been thus perfected. We
are not able to concur in this part of the report.
That there was a parol agreement that Wray and
wife were to have this part of the lot, in lieu of
Mrs. Wray's $400 legacy, and which was concurred in
by all of them, except Mrs. Miller, who was absent
and urged upon Wray, and which agreement was re-
duced to writing, and was signed by the widow and
most of the daughters, but never acknowledged or de-
livered, as before stated, we think is perfectly clear.
But that it was not binding upon any of these
daughters, even if it had been delivered, for the
reason that they were all either married women or
minors, is equally clear. As to the widow, Wray
and wife have had the benefit of it during the con-
tinuance of her life estate. The state of the title to
the property, the condition of the parties, and of the
property, was equally as well, if not better, known to

Wray, as it was to any of the other parties. There is not, in fact, any pretence that there was actual fraud or deception on the part of any of them, or that Wray was deceived in any manner whatever. And the only real grounds of estoppel urged is the fact that they refused to abide by a void agreement which none of them were competent to make and that well known to Wray at the time.

That *femes covert* and minors cannot be estopped in such a case, except for fraud or deceit, is perfectly well settled, and it is difficult to see how the fact that they availed themselves of a long established and well understood provision of law, made for their pro-tection, could be held to be fraudulent. And their mere acquiescence under disability could not affect them.

There can be no bar of the statute of limitations, for the reason that the life estate fell in August 11, 1870, and the bills in these causes were filed in 1874, and it is worthy of remark that in the one filed by Wray and wife they do not set up any claim to ex-clusive ownership of this part of the property. That seven years is required to complete the bar of the statute against remainder-men, after the termination of the life estate, even where the adverse occupant is claiming the fee pending the life estate is also well settled. The chancellor's decree upon this branch of the case was therefore correct, and the exceptions to this part of the report of the Referees must be sus-tained. The heirs of Mrs. Kerr, having elected to repudiate her deed and claim her interest in the

estate, must stand in her shoes and be required to re-
fund the considerations which she secured for it, and
which will constitute a lien upon said interest.

This has been so held, both by the chancellor and
the Referees, and in which we concur.

As to the claim of Mrs. Carlisle, to have the
purchase money paid by her to Mrs. Miller, declared
a lien upon the interest which she owned at the
time, now in the hands of Wray and wife, her subse-
quent vendees, presents a different question and about
which we have had some doubt. · The principle upon
which married women have been required, under our ·
decisions to refund the purchase money which they
have received, before they will be relieved against the
consequences of void conveyances executed by them,
seems to have been generally, if not always, that
they were asking some active aid or interposition of
the court. And as it would be inequitable that they
should be restored to the possession with which they
have parted without restoring the consideration therefor ·
received by them, they are required to do equity be-
fore they are entitled to relief. But conveyances exe-
cuted by married women although joined in the same
by their husbands, without a sufficient privy acknowl-
edgement, as required by the statute, are absolutely
void as to them, and that being the case it is diffi-
cult to see why any other person may not purchase
from them just the same as though the former convey-
ance had never been executed. Yet purchase money
received as consideration upon a void sale of land has
been treated as an equity attaching to the land, and

to which a subsequent purchaser with notice takes it subject, and in order to avoid which, it was held in the same case, a plea of innocent purchases for value without notice of the equity must be formally pleaded or relied upon by answer: *Rhea* v. *Allison*, 3 Head, 176.

In this case no such defense is attempted; but Wray admits in his deposition that he did know of the purchase by Mrs. Carlisle of Mrs. Miller's interest before he purchased it himself. In accordance with this ruling we hold that Wray did take the interest of Mrs. Miller subject to Mrs. Carlisle's equity to have her purchase money restored and his conveyance to his wife being merely voluntary she stands in no better condition. This interest, therefore, is subject to a lien in favor of Mrs. Carlisle for the value of the purchase price paid by her to Mrs. Miller for the same. This was so held by the chancellor, and in which the Referees have concurred.

The chancellor decreed that the administrator of one Kortrecht had a lien for $263 bid by him at a sheriff's sale in 1874 upon the interests of Mrs. Vaughn and Mrs. Miller. The record shows they had both sold their interests and the conveyances duly registered before the levy, and the Referees have reported that this portion of the chancellor's decree was erroneous and should be reversed, and that Kortrecht's estate is not entitled to anything. And there is no exception to this part of the report, and which will be in this respect confirmed. The report of the Referees except as to the interest of Mrs. Wray in a

lot on Adams street, will be confirmed and the chancellor's decree will be modified so as to disallow the item of $263 decreed in favor of Kortrecht, administrator, and in all other respects will be affirmed and the cause remanded to the chancery court to be proceeded in according to said decree with this modification above specified.

The costs of this court will be paid equally by Mrs. Carlisle and Wray and wife, they having alone appealed, and the costs of the chancery court as decreed by the chancellor.