EDDIE TUCK, BY NEXT FRIEND, W. O. LATHAM *v.* J. R. PAYNE, DOING BUSINESS AS GUARANTEED USED FORD EXCHANGE. █

(*Nashville.* December Term, 1928.)

Opinion filed May 25, 1929.

ROBERT L. SADLER, for plaintiff in error.

194

ROSCOE BOND, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This case was heard in the circuit court upon the following stipulation of facts:

"Eddie Tuck was born June 19, 1908, at Hartsville, Tennessee; and on June 13, 1928, he purchased from J. R. Payne, doing business as the Guaranteed Used Ford Exchange, a Buick Touring car for the sum of $450; he traded in as the cash payment, a Ford car, at an agreed value of $50; and executed notes at $30 each for the remainder, with title retained by the vendor; after making payments which with the first payment amounted to including car traded $117.50 upon default in further payments, the automobile was replevied by the vendor and sold for $150 leaving a balance due of $222.62.

"The plaintiff bought the car for pleasure uses.

"He has not been emancipated or had his disabilities of infancy removed.

"At the time of the purchase of the Buick car, he represented orally and in writing, that he was twenty-one years old, and he looked to be twenty-one years of age otherwise they would not have sold him the automobile."

The circuit judge dismissed the suit and plaintiff has appealed.

Counsel raise the single question as to whether, under the facts stated, the plaintiff is estopped to rely upon his infancy.

As a general rule, under the modern authorities, the contract of an infant is voidable, and may be dis-

affirmed either before or after attaining his majority. 14 R. C. L., 223, 235; 31 C. J., 1060, 1067.

■ To obtain relief an infant will be required to return the property obtained, if in his possession, but if he has squandered or lost the property, which came to him, he can avoid his obligation under the contract without returning the property. *Turney* v. *Railroad*, 127 Tenn., 673; *Whitman* v. *Allen* (Me.), 36 A. L. R., 779; 14 R. C. L., 238; 31 C. J., 1069.

■ It is equally well settled that in cases of actual fraud or deceit estoppel applies at law as well as in equity. *Barham* v. *Turbeville*, 31 Tenn., 440; *Myers* v. *Hurley Motor Co.*, 273 U. S., 18, 17 L. Ed., 328, 50 A. L. R., 1185; 31 C. J., 1107.

■ With respect to estoppel in cases of false representations as to age, we quote from 31 C. J., 1106, as follows:

"On the question as to what effect the false representation of an infant as to his age has on a merely voidable civil transaction entered into by the other party relying thereon, there is conflict of authority. In some jurisdictions, it is held that the fact that an infant at the time of entering into such transaction falsely represented to the person with whom he dealt that he was of age does not give any validity to the transaction or estop the infant from disaffirming the same or setting up the defense of infancy, against the enforcement of any rights thereunder, and this rule has been applied to deeds, mortgages, or other instruments affecting an infant's realty. In other jurisdictions, such false representation may, when accompanied with the other elements of estoppel, and in the absence of bad faith on the part of the other party to the transaction, estop the infant from disaffirming the transaction, both at law and in equity; especially if the

situation and appearance of the alleged infant at the time were such as tended to corroborate the statement as to his being of full age, and this rule has been applied to deeds, mortgages, or other instruments affecting an infant's realty.''

Mr. Pomeroy, in his work on Equity Jurisprudence (4 Ed.), vol. 2, sec. 945, says:

''The incapacity of infants to enter into binding contracts is the same in equity as in law; but such contracts are generally voidable only, and may therefore be ratified after the infant attain his majority. Fraud, however, will prevent the disability of infancy from being made available in equity. If an infant procures an agreement to be made through false and fraudulent representations that he is of age, a court of equity will enforce his liability as though he were an adult, and may cancel a conveyance or executed contract obtained by fraud.''

In *Myers* v. *Hurley Motor Co., supra,* Mr. Justice SUTHERLAND, in delivering the opinion of the court, said:

''The statement that the authorities are all one way in holding that an estoppel *in pais* is not—that is to say, is never—applicable to infants, at least of doubtful accuracy when made, is clearly incorrect at the present time. A review shows that many, perhaps the major part, of the state decisions hold that in equity the rule is otherwise. See Bigelow, Estoppel (6 Ed.), 627; 1 Williston, Contr., section 245. In any event, the most that can be said is that the decisions upon that subject are conflicting and to some degree in confusion. . . .

''Here the action brought by the quondam infant is one for money had and received—the payment under the disaffirmed contract having been either in money or in property converted into money before the disaffirmance. Such an action, though brought at law, is in its nature a sub-

stitute for a suit in equity; and it is to be determined by the application of equitable principles. In other words, the rights of the parties are to be determined as they would be upon a bill in equity. The defendant may rely upon any defense which shows that the plaintiff in equity and good conscience is not entitled to recover in whole or in part.''

In that case, however, the court declined to apply the strict doctrine of estoppel, for the reason that previous decisions had established the Federal rule to the contrary, but the seller was allowed to deduct for the use of and the depreciation in value of the automobile.

In passing upon this question the Court of Appeals of Kentucky, in *County Board of Education* v. *Hensley,* 42 L. R. A. (N. S.), 644, after reviewing its previous decisions, said:

''From these cases, the rule in this State, insofar as it is applicable to the facts of this case, may be stated as follows: When one deals with an infant, knowing him to be an infant, the latter is not estopped from relying upon his infancy in avoidance of the contract; but when an infant, by reason of his personal appearance, family surroundings, and business activities, coupled with a misrepresentation or fraudulent concealment, leads one who deals with him, in good faith, and not knowing that he is an infant, to believe that he is of age, he will be estopped from maintaining an action to avoid his executed contract. When he comes into equity seeking relief, he must come with clean hands. The privileges of infancy is a shield for the protection of the infant, and not a weapon of attack; nor is it to be used as a means of defrauding others.''

 The rule is based upon the maxims that he who seeks equity must do equity; that he who comes into

equity must come with clean hands; that no one can take advantage of his own wrong; that he that hath committed inequity shall not have equity, and that minors will not be permitted to use the shield of infancy as a cover, or turn it into a sword with which to injure others dealing with them in good faith. 14 R. C. L., 242; *Barham* v. *Turbeville, supra; County Board of Education* v. *Hensley, supra; Whitman* v. *Allen, supra; International Land Co.* v. *Marshall* (Okla.), 19 L. R. A. (N. S.), 1063.

Numerous cases supporting the rule will be found in the notes to the texts hereinabove cited. It is unnecessary to refer more particularly to other decisions since this court is committed to the rule of estoppel in cases of willful fraud and deceit.

In *Barham* v. *Turbeville, supra*, it was held that where an infant stands by when a slave in which he has title, and of which he is informed, is offered for sale by one having no title, and encourages the sale, whereby the vendee is induced to purchase under the impression that he acquires a good title, the infant so acting, upon his arrival at full age, cannot dispute the vendee's title. The court in its opinion said:

"In view of these authorities, as well as upon principle, it seemes to us, that in cases of actual fraud the principle of estoppel should apply at law as well as in equity, in the circumstances before stated, to protect the title of an innocent purchaser against the action of the party, who perpetrated the fraud.

"This rule, as we have seen, applies to infants as well as to adults—for infancy is no privilege to perpetrate frauds upon the rights of innocent persons, with impunity.

"But to hold the infant bound by his act or admission, it should appear to be a case of actual and positive fraud,

committed by some unequivocal act, and not merely inferred by his silence or acquiescence. It should also appear that he had full knowledge of his rights, and was not in a state of ignorance or misapprehension in regard to them—and that he possessed such discretion and intelligence as to enable him to comprehend the import and effect of his conduct in reference to his rights, as in the case of adults.

"These are, indeed, necessary elements of the actual and positive fraud, by which he may be precluded and estopped from asserting a right to the prejudice of an innocent purchaser, who has been influenced by his conduct."

In *Pilcher* v. *Smith,* 39 Tenn., 207, it was held that a married woman who had verbally sold a lot, received the consideration and placed the purchaser in possession would be held estopped to rely upon her coverture in an action to recover the lot without refunding the consideration.

In *Adams* v. *Fite,* 62 Tenn., 69, the complainant sought to recover a tract of land conveyed when he was twenty years of age and was repelled because he concealed the fact that he was not of full age and had knowledge that the purchaser was dealing with him as an adult.

In *Sautelle* v. *Carlisle,* 81 Tenn., 391, married women and infants were permitted to avoid a parol partition since they were not guilty of fraud or misrepresentation, but in the opinion it was said: "That *femes covert* and minors cannot be estopped in such a case, except for fraud or deceit, is perfectly well settled."

This court denied a petition for writ of *certiorari* in *Wood* v. *Imperial Motor Co.,* 5 App. Rep., 246, in which it was held, under similar facts, that the plaintiff was not entitled to recover the money paid on the purchase price of an automobile.

Counsel undertakes to distinguish this case from that of *Barham* v. *Turbeville, supra,* upon the theory that an infant is not liable for the tortious consequences of his breaches of contract, and cites *Lowery* v. *Cate,* 108 Tenn., 54. In that case an infant contracted to thresh a neighbor's wheat. He used an engine without a spark arrester and placed it so negligently as to set fire to and burn the neighbor's barn and contents. He was sued for the loss sustained and his plea of infancy was sustained. A distinction was made between the positively willful and merely negligent acts of the infant. It could hardly be said that the infant would not be liable had he purposely set fire to the barn. After reviewing the authorities, the court in the opinion said:

"Now, applying the test laid down in the cases cited, it will be observed that the tort, which is the foundation of the present action, was committed in the performance of a contract, and is not a willful or intentional wrong done independent of and outside of the contract."

This same point was raised in *International Land Co.* v. *Marshall, supra,* in response to which the court said:

"The other class of decisions, both English and American, whilst recognizing the nonliability of an infant upon its contract, yet differentiate between holding him upon a contract and making him responsible for his frauds, deceits, and falsehood in matters connected therewith, but not forming a constituent part of it, wherever the action brought or defense pleaded sounds in tort, and not in contract, although the deceit or fraud upon which the same is based was connected with the contract. . . . But the representation in *Johnson* v. *Pie,* and in the present case, that the defendant was of full age, was not a part of the contract, nor did it grow out of the contract or in any way result from it. It is not any part of its

terms, nor was it the consideration upon which the contract was founded. No contract was made about the defendant's age. The sale of the goods was not a consideration for this affirmation or representation. The representation was not a foundation for an action of assumpsit. The matter arises purely *ex delicto*. The fraud was intended to induce, and did induce, the plaintiff to make a contract for the purchase of the land covered by the deed, but that by no means makes it a part and parcel of the deed. It was antecedent to the deed, and, if the infant is liable for a positive wrong connected with the contract, but arising after the contract is made, he may well be answerable for one committed before the contract was entered into, although it may have led to the contract.''

The distinction is too obvious to demand further comment. We will add that in *Pilcher* v. *Smith, supra,* the fraud did arise out of contract, as counsel for plaintiff interprets that term.

The trend of modern authority is in support of the rule announced by this court more than three quarters of a century ago. The rule is an equitable one, and, when correctly applied, will work no injustice to the fraudulent vendee, will have a tendency to suppress deceptive bartering, and will protect innocent tradesmen.

The judgment of the circuit court will be affirmed with cost.