**John T. STINSON and wife, Mamie Stinson, Plaintiffs/Appellees,**

v.

**David L. BRAND and G. Reece Gibson, Defendants/Appellants.**

Supreme Court of Tennessee, at Knoxville.

Sept. 28, 1987.

George W. Morton, Jr., Janet L. Mayfield, Knoxville, for defendants/appellants.

Stephenson Todd, Todd & Dossett, P.C., Kingsport, for plaintiffs/appellees.

## OPINION

HARBISON, Chief Justice.

This is a suit for damages against a firm of attorneys practicing in a small town. The claim is based upon the alleged negligence of the attorneys, or a secretary in their office and acting under their supervision, in the preparation of two deeds and a deed of trust. The plaintiffs, appellees here, did not directly retain the attorneys to represent them, and they paid nothing to the attorneys for their services.

The trial judge directed a verdict for the attorneys, appellants here, upon the ground that they were not liable for negligence to non-clients. The Court of Appeals reversed and remanded the case for a new trial, finding that a jury issue was presented as to whether appellants were liable to appellees for the negligent supplying of information pursuant to *Restatement (Second) of Torts 2d,* § 552 (1977).

We affirm the decision of the Court of Appeals. Under the circumstances a jury issue was presented as to whether the attorneys were negligent in the preparation of the instruments and in the handling of the transaction. An issue may well be presented under Section 552, but a trier of fact could also find that the attorneys so far undertook to represent the interests of the sellers as to permit a direct action for negligence in doing so or in not more fully advising them.

There were some disputed issues of fact and some facts from which differing inferences might be drawn. The following statement of the facts is based upon the most favorable view of the record toward the plaintiffs, in view of the fact that there was a directed verdict for the defendants-appellants.

The plaintiffs, John T. Stinson and wife, Mamie Stinson, owned two houses and lots situated a few hundred yards from the site of their own residence. They had acquired these properties many years earlier and owned them free of encumbrances, except for a small amount of taxes.

Plaintiffs were about seventy years old in February and March 1980 when the transactions involved here took place. They had limited educations and business experience. They had acquired deeds to their own residence and to the two properties involved in the litigation, which they had duly recorded. They were not, however, sophisticated or experienced in real estate transactions.

On February 19, 1980 one Clyde D. Manis, a real estate broker in the community, called upon the Stinsons and offered them sixteen thousand dollars for the two houses and lots involved in this case. Plaintiffs had never met or dealt with him before. On that date they signed a written contract to sell the two properties to Avery L. Manis, brother of Clyde D. Manis, for the sum

of sixteen thousand dollars, one thousand of which was paid in cash upon the signing of the contract. The remainder was to be evidenced by a note with interest at ten percent, payable in six months. The note was to be secured by a deed of trust. The instrument was signed in the name of Avery L. Manis, as purchaser, and witnessed "Manis Brothers, Inc., by Clyde D. Manis."

Mr. Stinson died while the present litigation was pending and before giving any evidence, by deposition or otherwise. Mrs. Stinson testified that her husband had retired shortly before the transactions involved in this case and had a stroke shortly thereafter.

Neither of the Manis brothers testified in the action. Apparently Clyde Manis took the written contract to the offices of the defendants/appellants and requested an appropriate title search and the necessary legal instruments called for in the contract. He gave the contract to Mrs. Phyllis Broome, secretary to appellant Gibson. Gibson and appellant Brand were partners, but Brand had no direct involvement in or knowledge of the transactions giving rise to this suit.

Mrs. Broome made some handwritten notations on the contract, apparently reflecting instructions given to her by Clyde Manis or his brother. These called for a title search and for two separate deeds. They also contained the terms to be inserted in the note and contained the notation "leave deeds open."

Testifying concerning the transaction some five years later, Mrs. Broome had no independent recollection of the matter. She apparently gave Mr. Gibson some information from which he conducted a title search in the county seat, reporting no encumbrances except some unpaid taxes.

In accordance with her apparent instructions, Mrs. Broome prepared separate deeds for the two residential lots, to be executed by appellees, leaving the name of the grantee in each deed blank. Apparently this was done at the request of Clyde Manis, who was known by the sellers to be purchasing the property for his own account or that of his real estate firm.[1]

Mrs. Broome also prepared a note and deed of trust. The maker of the note was typed "MANIS BROTHERS, INC." It was signed by Clyde D. Manis and was made payable six months after date, the due date being September 10, 1980.

The deed of trust conveyed the property from Manis Brothers, Inc., to appellant G. Reece Gibson, Trustee. It was made and executed in the same manner as the note. In the acknowledgment Clyde D. Manis was stated to be the vice-president of the corporate grantor.

All of the instruments were dated March 10, 1980 and were executed on that date. Mrs. Stinson testified that Clyde Manis came to the residence of the sellers and took them in his automobile to the offices of appellants where all of the instruments were executed in the presence of Mrs. Broome. She was a Notary Public and duly acknowledged the execution of the two deeds (with the grantees' names in blank) and of the deed of trust. No closing statement was prepared. The sellers gave their check to Mrs. Broome for some unpaid taxes, and apparently these were paid to the county trustee by appellants or one of their employees.[2]

Mrs. Stinson testified that the deed of trust and note were delivered to her and her husband without any instructions. They did not record the deed of trust. They took the documents to their home and kept them in a safe place. She testified that there was expense involved in recording and that she and her husband saw no need to incur this expense in the absence of

---

1. It is at least a permissible inference from the record that he intended to have the names of grantees inserted later when he sold the properties, possibly for the purpose of avoiding a state transfer tax upon the original purchase price. T.C.A. § 67-4-409.

2. Mr. Gibson testified that his firm's financial records were lax. Apparently the Stinsons actually paid to Mrs. Broome only $101.66, and the law firm paid to the trustee $123.99. Seemingly the Stinsons were never billed for the difference.

some instructions that the instrument should be recorded.

Mrs. Broome testified that she did not recall whether she gave any instructions to appellees regarding the recording of the deed of trust. She said that her instructions from her employers, appellants here, were to advise persons receiving deeds of trust such as this from their office to record them. Taken most favorably to appellees, the record would support a finding that no such instructions were given in this case.

Manis Brothers, Inc. did not pay the note in accordance with its terms. They did, however, sell the two houses and lots later in the year. One of the lots was purchased by Terry Morelock, an employee at a local Baptist church. He purchased one of the tracts for $24,900, and his name apparently was filled in as the grantee on the original deed executed in blank by Mr. and Mrs. Stinson on March 10, 1980. Mr. Morelock executed a deed of trust to secure a note for $23,650 on July 11, 1980, having borrowed the funds from a savings and loan institution. The deed of trust was recorded the same date, and the previously incomplete deed from the Stinsons was completed and recorded at the same time. Mr. Morelock moved into the property shortly after the closing. Although he was a single man, he said that it would have been obvious to anyone in the neighborhood that the residence was occupied from and after July 1980.

The deed of trust securing Mr. Morelock's indebtedness showed on its face that it was prepared by Attorney Thomas A. Peters. Neither Mr. Peters nor any representative of the lending institution testified at the trial of this case.

Under date of November 10, 1980, the deed from appellees Stinson to the other house and lot was recorded, the grantee being shown as Jeffery L. Necessary and wife, Connie E. Necessary. The deed, of course, bore date and acknowledgment of March 10, 1980. The deed reflected a purchase price of eleven thousand six hundred dollars. No witness testified concerning the closing of this transaction.

Under date of November 28, 1980, Mr. Manis paid two thousand dollars in cash to the Stinsons; and two days later, on November 30, 1980, he paid them an additional fifteen hundred dollars. Mrs. Stinson noted these payments on the face of the original deed of trust. It will be recalled that the note to the Stinsons for fifteen thousand dollars was due and payable in full on September 10, 1980.

Mrs. Stinson testified that after these payments were made some neighbors or other unidentified persons advised her that she should record the deed of trust; and she ultimately did so on February 24, 1981, long after the recording of the deeds to Mr. Morelock and to Mr. and Mrs. Necessary above referred to.

Mr. Manis paid nothing else to the Stinsons, and he later went into bankruptcy. On July 8, 1982 the trustee in bankruptcy paid $663.11 to the Stinsons as a dividend, and apparently there is little prospect that any further dividends will be received. The record reflects that Manis was denied a discharge in bankruptcy because of fraud in the transactions.

No action was ever instituted, insofar as the present record reflects, against either the purchasers from Manis or the subsequent mortgagee which made a loan to Mr. Morelock. We are not concerned in this case, therefore, with whether or not those individuals were truly bona fide purchasers without notice or as to whether the lending institution holding Mr. Morelock's note could have sustained its lien as prior to that of the Stinsons. The suit for damages was brought only against the attorneys whose secretary prepared the legal instruments.

When the attorneys searched their files after suit was brought, it was found that they had billed Clyde D. Manis at Manis Brothers, Inc. for the title search and for the two separate deeds. Their invoice had never been paid. Apparently they never made any charge to anyone for the deed of trust and note. An inference could be drawn from the testimony of both Mr. Gibson and Mr. Brand that the law firm should

have charged the Stinsons for these instruments.

The printed contract between Manis and the Stinsons called for the purchaser to pay all expenses incident to consummating the transaction, but this language on the printed form was stricken through. There is no explanation concerning this in the record and no testimony as to what the actual agreement was between the Stinsons and their purchaser as to the closing costs.

It was the insistence of appellants at trial that the Stinsons were not their clients. They insist that they did not attempt to advise or represent the Stinsons and that they could not properly do so in view of the fact that the purchaser, Manis, was their regular client and was the one to whom their bill was submitted. Their counsel points to provisions of the Code of Professional Responsibility generally prohibiting an attorney from representing conflicting interests, DR5–105, or from giving advice to an adverse party not represented by a lawyer other than possible advice to secure independent counsel. DR7–104.

◼︎ It is, of course, the general rule that an attorney is not liable for negligence to third parties who are not clients and are not in privity of contract with the attorney. *See generally National Savings Bank v. Ward,* 100 U.S. (10 Otto) 195, 25 L.Ed. 621 (1879); 7 Am.Jur.2d *Attorneys at Law* § 232 (1980). *But see* Annot. 45 A.L.R.3d 1181 (1972) (noting the general rule but listing a number of situations in which liability to non-clients has been sustained).

◼︎ We have confined our consideration in this case to the issue of negligence. Appellees contend that there was sufficient evidence of actual fraud and deceit on the part of appellants to make a submissible jury issue on that theory. We are of the opinion that the trial judge correctly directed a verdict on that claim. As previously stated, Attorney Brand had no knowledge of the transaction at all, and apparently Attorney Gibson did no more than search the title. Neither of them had any conversations with Manis, and neither they nor their secretary, Mrs. Broome, is shown to have had any knowledge of any fraudulent

purpose on the part of Manis or to have participated therein. Appellants do not deny that they are responsible for the negligence, if any, of Mrs. Broome, since she was their employee and was acting at all times in the scope and course of her employment.

◼︎ It is well settled in this state that an attorney may be liable to a third person, even an adverse party in litigation, for malicious prosecution and abuse of process. *See Peerman v. Sidicane,* 605 S.W.2d 242 (Tenn.App.1980). Further, as pointed out by the Court of Appeals, in the case of *Tartera v. Palumbo,* 224 Tenn. 262, 453 S.W.2d 780 (1970), this Court adopted the principles later approved by the American Law Institute in *Restatement (Second) of Torts 2d,* § 552 (1977) in connection with the liability of business or professional persons who negligently supply false information for the guidance of others in their business transactions. These principles, of course, could apply to attorneys as well as to land surveyors, accountants, or title companies.

We adhere to the decision in that case and agree with the Court of Appeals that sufficient facts and circumstances were adduced in the present case to make a jury issue against appellants thereunder.

Further, in our opinion, appellants so far involved themselves in the transaction that a trier of fact could find that they were representing multiple interests, not just the purchaser, and could be liable to appellees for negligence on that basis. The appellants did attempt to furnish a proper deed of trust in this case, and one of them actually was named as trustee in that instrument to act for and on behalf of the holder of the note—Mr. and Mrs. Stinson. It is true that Mr. Gibson may not have known that his secretary inserted his name as trustee and that he could have resigned or have been replaced at a later date. As the papers were actually prepared for recording, however, he was the named trustee for these very persons, with duties and obligations spelled out in the instrument. Both of the deeds prepared by appellants

bore a legend that they were prepared for recording by their office, and their names as attorneys were stamped on the deed of trust, indicating that they had prepared it for recording also.[3]

As pointed out by counsel for appellees, the deed of trust purported to be executed by Manis Brothers, Inc., as grantor, whereas no warranty deed vesting title in Manis Brothers, Inc. was ever prepared or recorded. All of the attorneys who gave opinions on the matter in this case testified that preparing warranty deeds in blank, with no grantee designated, was highly unusual. Mr. Gibson testified that he would never have permitted such an instrument to leave his office had he known about it without strongly advising against it. With the deeds in this form, and with the grantees to be designated at a later date, it was unlikely that the deed of trust from Manis Brothers, Inc. to Mr. Gibson as Trustee would have been discovered by anyone searching the title; or, at least, a trier of fact could so find, even if the deed of trust had been recorded. Further, as previously stated, there was evidence that Mrs. Broome was instructed to advise persons such as the Stinsons to record their deed of trust and that she failed to do so.

Under all of the circumstances, we are of the opinion that jury issues were presented as to the alleged negligence of appellants. There are, of course, issues of contributory negligence, proximate cause and damages, all of which require consideration by a trier of fact as well; but we are of the opinion that the trial judge erred in directing a verdict because of the absence of privity of contract or the absence of any legal duty to appellees.

■ We recognize that the relationship between an attorney and the parties to a real estate transaction is often complex and delicate. *See generally* Annot. 68 A.L. R.3d 967 (1976). It may well be that an attorney could properly represent all concerned if adequate disclosures were made. On the other hand, it may well be that an attorney should refuse to represent some of the parties or should advise them to retain independent counsel. Where attorneys charge or intend to charge all parties for services in connection with a real estate transaction, there is nothing unusual or harsh in requiring the exercise of reasonable care toward all concerned.

■ We recognize that appellants insist that they represented only Manis in this case and that they followed his instructions to the letter. At best, however, the transaction was loosely and inexpertly handled, with a legal secretary being permitted to conduct an apparently routine matter without submitting the legal documents to her employers for approval. A jury could find that appellants intended to charge appellees for preparing the note and deed of trust, in which case they would clearly have been acting for the sellers. Even without charging the sellers, appellants may be found to have been acting for them by naming one of the appellants as trustee for the sellers. And even if no attorney-client relationship existed or was intended, appellants could be liable for negligence under the principles of the *Tartera* case, *supra.*

The judgment of the Court of Appeals is affirmed, and the cause is remanded for a new trial. Costs incident to the appeal are taxed to appellants. All other costs will be taxed by the trial court.

FONES, COOPER, DROWOTA and O'BRIEN, JJ., concur.

---

3. *See* T.C.A. § 66–24–115, requiring the name of the person preparing a conveyance to appear thereon before the instrument can be accepted for recording.