145 F.3d 755
 Max W. MENUSKIN, Sarah H. Newman, C.E. Barnes, Bess Barnes,
Elizabeth S. Wynn, Lew Phillips, Mamie Phillips,
Ed Merritt, and Judie Merritt,
Plaintiffs-Appellants,
v.
Don WILLIAMS, Alice Williams, and First American National
Bank, Defendants,
Vicki Cooke, Cathleen N. Miles, Susan Parker, National Title
Insurance Agency, and J.P. Sartain, Defendants-Appellees.
 No. 96-6479.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 2, 1997.
Decided May 14, 1998.
 
 Fred T. Hanzelik (argued and briefed), Carl Travis Maxwell, M. Brent James, Hanzelik & Associates, Chattanooga, TN, for Plaintiffs-Appellants.
 Thomas E. Ray (argued and briefed), Ray & Bolen, Chattanooga, TN, for Defendant-Appellee Vicki Cooke.
 Marvin Berke (argued), Andrew L. Berke (briefed), Berke, Berke & Berke, Chattanooga, TN, for Defendant-Appellee Cathleen N. Miles.
 Joe A. Conner (argued and briefed), Richard J. McAfee (briefed), Baker, Donelson, Bearman & Caldwell, Chattanooga, TN, for Defendants-Appellees National Title Insurance Agency, J.P. Sartain.
 W. Gerald Tidwell, Jr. (briefed), Chattanooga, TN, for Defendant-Appellee Susan Parker.
 Before: BOGGS and MOORE, Circuit Judges; DOWD,* District Judge.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 The Plaintiffs-Appellants in this case purchased property from a development corporation, Don Williams Construction Co., Inc. ("DWCC"), and later discovered that, contrary to the warranty deeds they received, their properties were actually encumbered by a construction lien. The head of the development company, Don Williams, settled his portion of this case and is serving time in jail for his role in the events underlying this action.[1] Based on a variety of state law claims,[2] the appellants are attempting to collect damages from the development company employees, Vicki Cooke, Cathleen N. Miles, and Susan Parker, who allegedly indicated that the property would be free of encumbrances, and from the title company, National Title Insurance Agency ("National Title"), and its attorney, J.P. Sartain, who prepared the warranty deed for the closing on their properties. These claims include: negligent misrepresentation, negligence, gross negligence, fraud, violation of the Tennessee Consumer Protection Act ("TCPA"), TENN.CODE ANN. §§ 47-18-101 through § 47-18-121, breach of contract, breach of warranty, civil conspiracy, and negligent and intentional infliction of emotional distress. For the reasons discussed below, we AFFIRM the district court's granting of summary judgment for appellee Cooke on all claims, and for all of the other appellees on the gross negligence, fraud, breach of contract, breach of warranty, civil conspiracy, and negligent and intentional infliction of emotional distress claims. We AFFIRM the grant of summary judgment for appellees National Title and Sartain on the negligence claim, but REVERSE the grant of summary judgment on the negligence claim as it applies to appellees Parker and Miles. We also REVERSE the grant of summary judgment as it applies to all of the appellees, except Cooke, on the negligent misrepresentation and TCPA claims.
 
 I. STATEMENT OF THE FACTS
 
 2
 The appellants contracted to have homes built for them in a subdivision and to purchase the homes from the development corporation, DWCC. The appellants allege that on an individual basis DWCC employees Cooke, Miles, and Parker assured individual appellants that they did not need to have their own attorneys or title insurance because DWCC's attorneys would handle the sales contracts and perform a title search. The identity of these attorneys or title companies was never disclosed to the appellants.
 
 
 3
 The sales contract for the property provided that:
 
 
 4
 The Seller agrees to convey said property to the purchaser by general warranty deed free of all encumbrances, except as hereinabove set out, and Seller agrees that any encumbrance not herein excepted will be cleared at the time of closing.
 
 
 5
 J.A. at 584 (Menuskin Sales Contract); J.A. at 586 (Newman Sales Contract); J.A. at 588 (Barnes Sales Contract); J.A. at 590 (Wynn Sales Contract); J.A. at 591 (Phillips Sales Contract); J.A. at 592 (Merritt Sales Contract). Appellants wrote checks made out to DWCC for $1,000 as earnest money, and appellants contend that the total price included the cost of all legal and title work. See, e.g., J.A. at 1089, 1098 (Newman Dep.); J.A. at 1067 (J. Merritt Dep.). At all times, appellants' contacts in relation to the purchase of the properties were with Don Williams or other DWCC employees.
 
 
 6
 As part of the development project, Don Williams, through DWCC, obtained a construction loan to build the homes; Williams hired National Title to prepare a construction lien on the properties in order to finance this loan with a local bank. Rather than paying off the construction loan when the appellants paid for their property, Williams used appellants' payments to finance the development of a golf course that he was also developing. See J.A. at 390-92 (Sentencing Hr'g Tr.). Shortly thereafter, DWCC declared bankruptcy. Approximately a year after they purchased their homes, the local bank informed the appellants of the liens on their homes and that the bank would foreclose on the properties. The appellants were able to negotiate an agreement with the bank whereby the appellants essentially had to repurchase their homes from the bank. The appellants filed suit against DWCC and its employees and officers in their individual capacities. A settlement was entered against Mr. Williams, see J.A. at 1301 (Dist.Ct. J.), and he is also serving a jail sentence for his associated crimes.
 
 
 7
 Appellants are also attempting to recover from National Title and J.P. Sartain, an attorney for National Title, who prepared the warranty deeds on the properties. The only evidence in the record indicates that DWCC, and not the appellants, asked National Title to prepare the warranty deeds and nothing more. See J.A. at 121 (Sartain Aff.). In other words, National Title was never asked to perform a title search or to provide title insurance. See id. The warranty deeds stated that:
 
 
 8
 Grantor, covenants that it is lawfully seized and possessed of said real estate, has full power and lawful authority to sell and convey the same; that the title thereto is clear, free and unencumbered except as hereinabove mentioned, and Grantor will forever warrant and defend the same against all lawful claims.
 
 
 9
 See, e.g., J.A. at 837 (Menuskin Warranty Deed). These deeds also included a stamped notation, located in various spots on the deeds, reading as follows: "Prepared by James P. Sartain, Jr., Attorney at Law." Id. When delivered to the appellants, the deeds were contained in a folder bearing the National Title logo. For the preparation of these documents, National Title received thirty dollars per document from DWCC. See J.A. at 121 (Sartain Aff.). The appellants never had any contact with National Title or Sartain other than the receipt of the warranty deeds. Several of the appellants did, however, indicate that they saw signs or folders that bore National Title's name or logo when they were dealing with DWCC employees. See, e.g., J.A. at 958, 970 (Barnes Dep.); J.A. at 976-77 (Burchard Dep.); J.A. at 1020-23, 1026 (E. Merritt Dep.); J.A. at 1043, 1065-66 (J. Merritt Dep.); J.A. at 1003-05 (Menuskin Dep.).
 
 
 10
 The district court entered summary judgment for defendants National Title, Sartain, Cooke, Parker, and Miles. See J.A. at 1259 (Dist.Ct.Mem.). Judgment was entered against Don Williams and DWCC. See J.A. at 1301 (Dist.Ct. J.).
 
 II. ANALYSIS
 
 11
 This court reviews a district court's decision to grant summary judgment de novo. See Rowley v. United States, 76 F.3d 796, 799 (6th Cir.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In applying this standard, we view the evidence so that all justifiable inferences are drawn in favor of the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A federal court exercising supplemental jurisdiction is bound to apply the law of the forum state, including its choice of law rules. See Haynes v. Marshall, 887 F.2d 700, 705 (6th Cir.1989) (citing Guaranty Trust Co. v. York, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)); see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because these transactions are wholly connected with Tennessee, we agree with the parties' assumption that Tennessee supplies the governing substantive law.
 
 
 12
 The appellants' claims against the appellees include: negligence, gross negligence, fraud, negligent misrepresentation, violation of the Tennessee Consumer Protection Act ("TCPA"), TENN.CODE ANN. §§ 47-18-101 through § 47-18-121, breach of contract, breach of warranty, civil conspiracy, and negligent and intentional infliction of emotional distress. After addressing a preliminary matter regarding the liability of appellee Cooke, we will discuss each of these claims in turn, distinguishing among the appellees where relevant.
 
 
 13
 A. A PRELIMINARY NOTE ON VICKI COOKE'S LIABILITY
 
 
 14
 We discuss preliminarily the status of Vicki Cooke since the appellants have argued that her situation is unique to the extent that she is the daughter of Don and Alice Williams and she served as an officer of DWCC. Under Tennessee law, a corporate officer is only personally liable for torts in which he or she participated in the wrong. See Cooper v. Cordova Sand & Gravel Co., 485 S.W.2d 261, 271-72 (Tenn.Ct.App.1971). The appellants insist that "Cooke knew of the prior existing liens in her inside position as Secretary, Treasurer, billpayer and bookkeeper for DWCC and as the daughter of Don and Alice Williams." Appellants' Br. at 39. The appellants are unable, however, to "offer any proof of Cooke's responsibilities: there are no documents showing her signature on check stubs, payroll books, or office memoranda, and there is no adequate description of her duties." J.A. at 1297 (Dist.Ct.Mem.). At most, the appellants are merely able to rely on Cooke's signature on one sales contract and one warranty deed, see J.A. at 833 (Phillips Sales Contract), 838 (Menuskin Warranty Deed), and on Cooke's testimony and that of her coworkers to argue that Cooke may have written some payroll checks. See Appellants' Br. at 42-43 (relying on such testimony); J.A. at 656 (Parker Dep.). There is no evidence to support the appellants' assertion that Cooke was responsible for making the mortgage payments on the construction loans or that she personally made any affirmative misrepresentations to any of the appellants.
 
 
 15
 To support their argument against Cooke, the appellants rely on Citizens Savings & Loan Ass'n v. Fischer, 67 Ill.App.2d 315, 214 N.E.2d 612 (1996), which involved a factual scenario the appellants refer to as "almost indistinguishable" from the instant case. The court in Fischer, however, indicated that:
 
 
 16
 As a general rule a corporate officer or director is not liable for the fraud of other officers or agents merely because of his official character, but he is individually liable for fraudulent acts of his own or in which he participates. The mere fact that a person is an officer or director does not per se render him liable for the fraud of the corporation or of other officers or directors. He is liable only if he, with knowledge, or recklessly without it, participates or assists in the fraud.
 
 
 17
 Fischer, 214 N.E.2d at 615-16 (citation omitted); see also Cooper, 485 S.W.2d at 271-72 (holding that a director or officer is not personally liable for the torts of the corporation unless the director or officer actively participated in the wrongdoing); J.A. 674-76 (Fisher v. Williams, No. 92-CV-872, Cir. Ct. of Hamilton County, Tenn., Div. III, Judge's Mem. Op.) (holding that Fischer, although an Illinois case, "accurately reflects the law of Tennessee"). Because there is no evidence that Cooke knew the true state of affairs or that she participated in any fraud against the appellants, any liability for Cooke must be premised on her individual actions and not solely on her status as an officer of DWCC. Cooke's only involvement in these transactions was to sign, as an agent of DWCC, one sales contract and one warranty deed. See J.A. at 833 (Phillips Sales Contract signed by Cooke), 838 (Menuskin Warranty Deed signed by Cooke). Because the appellants have been unable to point to any affirmative misrepresentations by Cooke, we hold that the district court properly entered summary judgment for appellee Cooke on all claims. We now turn to the various claims brought against the other appellees.
 
 B. NEGLIGENT MISREPRESENTATION
 
 18
 To analyze negligent misrepresentation claims, in Tartera v. Palumbo, 224 Tenn. 262, 453 S.W.2d 780, 784-85 (1970) (dispensing with the privity requirement), the Tennessee Supreme Court adopted the principles that were later embodied in the RESTATEMENT (SECOND) OF TORTS § 552 (1977). Section 552 provides in relevant part that:
 
 
 19
 (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 
 
 20
 (2) Except as stated in Subsection (3), the liability stated in Subsection (1), is limited to loss suffered
 
 
 21
 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
 
 
 22
 (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
 
 
 23
 See also John Martin Co. v. Morse/Diesel, Inc., 819 S.W.2d 428, 431 (Tenn.1991) (quoting § 552). This standard imposes liability in tort in the absence of privity when:
 
 
 24
 (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
 
 
 25
 (2) the defendant supplies faulty information meant to guide others in their business transaction; and
 
 
 26
 (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
 
 
 27
 (4) the plaintiff justifiably relies upon the information.
 
 
 28
 John Martin Co., 819 S.W.2d at 431.
 
 1. NATIONAL TITLE & SARTAIN
 
 29
 The appellants' only evidence of any misrepresentation on the part of National Title and Sartain is the warranty deeds and folders. See J.A. at 121, 122 (Sartain Aff.); J.A. at 168-69 (Barnes Dep.); J.A. at 193 (J. Merritt Dep.); J.A. at 225 (E. Merritt Dep.); J.A. at 298 (Wynn Dep.); J.A. at 311-22 (Newman Dep.).
 
 
 30
 We hold that the preparation and the delivery of the warranty deeds create a genuine issue of material fact as to National Title's and Sartain's liability for negligent misrepresentation. The first element of the John Martin test is met because National Title and Sartain prepared the warranty deeds as part of their business. There is a dispute as to whether the three remaining elements are met. We hold that the evidence in this case presents a genuine issue of material fact as to whether National Title's and Sartain's preparation and delivery of the warranty deeds conveyed faulty information meant to guide the appellants in their purchase of their properties. The existence of a warranty guaranteeing that title was free and clear of all encumbrances was obviously part of the bargain in purchasing the properties. See, e.g., J.A. at 584 (Menuskin Sales Contract) (stating that "[t]he Seller agrees to convey said property to the purchaser by general warranty deed free of all encumbrances, except as hereinabove set out, and Seller agrees that any encumbrances not herein excepted will be cleared at the time of closing."). By including the National Title logo on the documents delivered to the appellants, National Title and Sartain may have given the appellants the false impression that they had performed a title search.
 
 
 31
 The appellants also testified that they relied on the warranty deed before completing the closing. As it turned out, the information contained in the warranty deed was indeed faulty. The property was not free and clear of all encumbrances. The appellants claim that by not inserting a disclaimer on the warranty deed, indicating that National Title and Sartain assumed no responsibility for the information, National Title and Sartain failed to exercise reasonable care. The appellants point to such a disclaimer used in the past by National Title, which reads: "This instrument was prepared from information furnished by the parties herein for which the preparer assumes no responsibility." J.A. at 855 (Plaintiff Ex. 56); see also J.A. at 858 (Plaintiff Ex. 57). The appellants also introduced testimony from a local attorney who stated that many title companies in the Chattanooga area included such a disclaimer. See J.A. at 1134 (Patrick Dep.). This evidence raises a genuine issue of material fact as to whether National Title and Sartain exercised reasonable care in obtaining or communicating the information to the appellants.[3] For these reasons, we reverse the district court's grant of summary judgment regarding the negligent misrepresentation claim against National Title and Sartain.
 
 2. PARKER AND MILES
 
 32
 Appellees Parker and Miles allegedly represented to individual appellants at various times that the property was free and clear of encumbrances or that the title work was already done and the appellants did not need to retain their own attorney since DWCC was providing them with one to complete the transaction.[4] See, e.g., J.A. at 1089 (Newman Dep. stating that Parker made such representations); J.A. at 59-60 (E. Merritt Aff. stating Miles made such representations). As explained previously, the property was not conveyed free and clear of all encumbrances, and the attorneys that DWCC hired did not complete a title search in order to guarantee that the property was free and clear. We believe that under the John Martin test, this raises a genuine issue of material fact as to whether the actions by Parker and Miles constituted the conveyance of faulty information intended to guide the appellants in their purchase of the homes, whether the appellants reasonably relied on this communication, and whether the appellees failed to exercise reasonable care in obtaining or communicating any such information.
 
 C. FRAUD
 
 33
 Under Tennessee law, "[t]he elements of fraud are an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, i.e., it was made 'knowingly' or 'without belief in its truth' or 'recklessly' without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact." Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n, 835 S.W.2d 25, 29 (Tenn.Ct.App.1992). Appellants' claims of fraud fail because they have not provided any evidence to show that any of the appellees knew of Williams's use of the sale proceeds for other purposes, that they made an intentional misrepresentation, or that any possible negligence rose to the level of recklessness.
 
 
 34
 Lacking any evidence that the appellees intentionally sought to deceive them, the appellants' only argument is that the appellees provided information recklessly, without regard to its truth or falsity. This argument is unsupported by the evidence. For claims of fraud, the Supreme Court of Tennessee has indicated that recklessness means a carelessness as to whether the facts are true or false or without belief in their truth. See Tartera, 453 S.W.2d at 782. In other words "the facts must show an intent to deceive on a material matter." Wilder v. Tennessee Farmers Mutual Ins. Co., 912 S.W.2d 722, 726 (Tenn.Ct.App.1995) (citing Womack v. Blue Cross & Blue Shield, 593 S.W.2d 294 (Tenn.1980)). The appellants have not produced any evidence which would indicate that any of the appellees did not believe in the truth of what they were saying. The only evidence on the record is that all of the appellees, based on their faith in Williams, believed what they were stating was the truth. The appellees may be liable under a theory of negligent misrepresentation, but the appellants have not produced any evidence to refute the appellees' evidence that they believed in the truth of what they were conveying. The appellants have not provided any evidence that a reasonable jury could find indicates the appellees acted recklessly, and thus we affirm the district court's grant of summary judgment for all of the appellees on this claim.
 
 D. NEGLIGENCE
 
 35
 In order to establish negligence under Tennessee law (which we will sometimes refer to as "simple negligence" to distinguish it from "negligent misrepresentation" in this case), three elements must be established: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff which was proximately caused by the defendant's breach of a duty." Dooley v. Everett, 805 S.W.2d 380, 383 (Tenn.Ct.App.1990) (quoting Lindsey v. Miami Dev. Corp., 689 S.W.2d 856, 858 (Tenn.1985)).
 
 1. NATIONAL TITLE AND SARTAIN
 
 36
 In discussing the appellants' negligence claim against National Title and Sartain, we note the distinction between negligent misrepresentation and simple negligence drawn by the Tennessee Supreme Court in Stinson v. Brand, 738 S.W.2d 186 (Tenn.1987).[5] The defendant in Stinson was a law firm that had been asked by a purchaser of property to perform a title search and prepare the legal documents necessary to convey the property. The sale was to be financed primarily by a promissory note of the purchaser, secured by a deed of trust. Both the sellers and the purchaser met at the law firm with the firm's secretary and executed the documents there. A stamped legend on the deeds stated the name of the law firm and attorneys as an indication of who had prepared the deeds and the deed of trust, and one of the attorneys of the firm was listed as a trustee on the deed of trust to act on behalf of the sellers. The purchaser apparently requested that the law firm leave blank the name of the grantee on the property deeds. After the instruments were executed, as part of the transaction the defendant law firm paid the back taxes on the property with a check given it by the sellers. The law firm never gave any instructions to the sellers and, therefore, when the sellers received the deed of trust they never took any action to record it. See id. at 188-89 (finding the defendant-law firm did not give the plaintiffs-sellers instructions to record the deed of trust).
 
 
 37
 The purchaser never paid the promissory note, and because the deed of trust was not recorded, the purchaser was able to resell the property. The purchaser then filed for bankruptcy, leaving the plaintiffs-sellers no direct recourse against the purchaser on the sale. The court held that the law firm and its lawyers "so far involved themselves in the transaction that a trier of fact could find that they were representing multiple interests," id. at 190, even though they only charged a fee to the purchaser. Under these facts, the court held that a jury could find that the defendant-law firm was required to exercise "reasonable care toward all concerned." Id. at 191.
 
 
 38
 In the instant case, as the district court in this case pointed out, there is no evidence to suggest "that National Title and Sartain approached the level of involvement in the real estate transactions comparable to the defendants in Stinson. See also John Martin Co., 819 S.W.2d at 429-30 (discussing the defendant's level of supervision and control)." Menuskin v. Williams, 940 F.Supp. 1199, 1215 (E.D.Tenn.1996). Stinson makes a clear distinction between cases where the attorneys are "so involved" in the transaction as to be representing both sides of the transaction and those cases that merely involve a claim of negligent misrepresentation. See Stinson, 738 S.W.2d at 191 (noting that "even if no attorney-client relationship existed or was intended, appellants could be liable for negligence under the principles of the Tartera case"); Collins v. Binkley, 750 S.W.2d 737, 739 (Tenn.1988). In this case, the appellants have presented insufficient evidence to indicate that there was an attorney-client relationship between the appellants and National Title or Sartain. Without an attorney-client relationship in this case, there is no support for a claim of simple negligence, but only the possibility of a claim of negligent misrepresentation as discussed supra in Part II.B.1.
 
 As the district court indicated:
 
 39
 Plaintiffs were buyers of and DWCC was the seller of real estate. DWCC requested that National Title and Sartain prepare the warranty deeds for the real estate transactions; the documents met the minimum requirements for recording. DWCC did not request from National Title and Sartain a title search, title insurance, or assistance conducting the closings. Miles, Parker, and Cooke did not clearly and directly identify National Title and Sartain as the title company and attorney purportedly performing the necessary title and legal work. Plaintiffs do not assert that National Title and Sartain were aware of the representations made by Parker, Miles, and Cooke that a "title company" and an "attorney" were purportedly performing title and legal work on behalf of Plaintiffs. In apparent reliance upon the statements by Miles, Parker, and Cooke, Plaintiffs chose not to have attorneys, not to have the titles searched, and not to purchase title insurance. Neither Sartain nor anyone else from National Title met or talked with Plaintiffs before the closings.
 
 
 40
 Menuskin, 940 F.Supp. at 1217.
 
 
 41
 We quote the district court here not to suggest that the inclusion of any one of these facts would necessarily be sufficient to support a claim of simple negligence, but merely to indicate that their absence in this case enables the appellees to prevail on their motion for summary judgment. For these reasons, we affirm the district court's grant of summary judgment for National Title and Sartain on the simple negligence claim.
 
 2. PARKER AND MILES
 
 42
 As noted above in the negligent misrepresentation discussion supra Part II.B.2., there is a genuine issue of material fact as to whether Parker and Miles acted reasonably in conveying any information to the appellants. What distinguishes these appellees from National Title and Sartain is that they dealt directly with the appellants who were customers of DWCC and, therefore, may have owed a duty of care based on that relationship. There may have been a seller-customer relationship between Parker and Miles, based on their status as agents of DWCC, and the appellants, which may create a special duty of care on the part of these appellees. For these reasons, we reverse the district court's grant of summary judgment for appellees Parker and Miles with regard to the negligence claims against them.
 
 E. GROSS NEGLIGENCE
 
 43
 The plaintiffs claim that the defendants' actions rise to the level of gross negligence. See J.A. at 33 (Compl. at 13). To prevail on a claim of gross negligence in Tennessee, a plaintiff must demonstrate ordinary negligence and must then prove that the defendant acted "with utter unconcern for the safety of others, or ... with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law," Odum v. Haynes, 494 S.W.2d 795, 807 (Tenn.Ct.App.1972), or from "a conscious neglect of duty or a callous indifference to consequences .... [or] such entire want of care as would raise a presumption of a conscious indifference to consequences," Buckner v. Varner, 793 S.W.2d 939, 941 (Tenn.Ct.App.1990) (quotation omitted, alteration in original). The appellants have failed to provide sufficient evidence indicating that any of the appellees acted with such a recklessness or a conscious neglect of a duty. There is no evidence suggesting that any of the appellees knew of Don Williams's fraud against the appellants or that the failure of any of the appellees to embark on an independent investigation of the status of the titles was reckless behavior. As this court has held in a different context, "[n]egligence does not become 'gross' just by saying so." Jones v. Sherrill, 827 F.2d 1102, 1106 (6th Cir.1987). The appellants have therefore failed create a genuine issue of fact material to the determination of the claim of gross negligence against any of the appellees.
 
 
 44
 Without even addressing the governing standard for gross negligence claims in Tennessee, the plaintiffs assert that "[t]he question of whether conduct constitutes gross negligence in Tennessee is a question of fact to be determined by a jury and is improper for summary judgment. Dodson v. Shrader, 824 S.W.2d 545 (Tenn.1992)." Appellants' Br. at 30. This assertion is completely groundless. First, Dodson only stated that the issue of whether the particular actions in question in that case involved gross negligence was "a matter for determination at the trial level." Id. at 550. Second, the Supreme Court of Tennessee has affirmed the grant of summary judgment for a defendant on the issue of gross negligence in the past. In Buckner, the sole issue was whether a claim of gross negligence could survive a motion for summary judgment. See 793 S.W.2d at 940. The court stated that "where genuine issues exist regarding whether certain actions or conduct amount to gross negligence, summary judgment is inappropriate." Id. at 941. In Buckner a rider brought suit against a riding stable owner seeking damages for personal injuries sustained when she fell from a horse. She alleged that the defendant negligently provided her with unsafe riding equipment and an ill-tempered horse. In response to the defendant's motion for summary judgment, the plaintiff provided "affidavits of two other people who stated they were injured due to defective riding equipment while riding Defendant's horses." Id. The court held that summary judgment was appropriate because the "Plaintiff ... failed to show in her response there is 'genuine issue for trial,' " on the issue of gross negligence. Id. The plaintiff's affidavits failed to establish either that the "Defendant consciously or knowingly supplied Plaintiff with defective equipment or an ill-tempered horse" or that the "Defendant acted in wanton disregard of the Plaintiff's safety." Id.
 
 
 45
 Based on the Buckner decision and the reasons stated above, we hold that the issue of gross negligence was properly considered for summary judgment and affirm the district court's grant of summary judgment for all of the appellees.
 
 F. TENNESSEE CONSUMER PROTECTION ACT
 
 46
 The appellants claim that the actions of the appellees violated the Tennessee Consumer Protection Act ("the TCPA"), TENN.CODE ANN. §§ 47-18-101 to 47-18-5002 (1995 & Supp.1997). The TCPA provides a private right of action for any consumer who is the victim of "unfair or deceptive" acts in the course of trade or commerce. See TENN.CODE ANN. § 47-18-109.
 
 
 47
 We begin our analysis of this claim with the understanding that the TCPA does cover these real estate transactions. See Ganzevoort v. Russell, 949 S.W.2d 293, 298 (Tenn.1997) (drawing a distinction between a real estate agent and an owner-seller in holding that the TCPA does cover the sale of real property, but does not cover a person not generally engaged in the sale of real property).
 
 
 48
 Although there is some apparent conflict among courts in Tennessee as to whether the intent to deceive is a requirement under the TCPA, compare Groover v. Torkell, 645 S.W.2d 403, 409 (Tenn.Ct.App.1982) (noting that "the concept of 'deceptive' carries with it an element of intent") with Brandel v. Moore Mortgage & Inv. Co., 774 S.W.2d 600, 607 (Tenn.Ct.App.1989) (suggesting that an unintentional use of deception is within the scope of the TCPA); Haverlah v. Memphis Aviation, Inc., 674 S.W.2d 297, 305-06 (Tenn.Ct.App.1984); Brungard v. Caprice Records, Inc., 608 S.W.2d 585, 591 (Tenn.Ct.App.1980), we believe the more reasoned view is that intent is not required. See JEFFREY L. REED, Comment, The Tennessee Consumer Protection Act: An Overview, 58 TENN. L.REV. 455, 466-471 (1991) (discussing the apparent conflict in cases and concluding that intent is not required). The TCPA allows for treble damages only when a "willful or knowing" violation occurs. See TENN.CODE ANN. § 47-18-109(a)(3) ("If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper."). " 'Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' " Lake Cumberland Trust, Inc. v. U.S. E.P.A., 954 F.2d 1218, 1222 (6th Cir.1992) (quoting Boise Cascade Corp. v. U.S. E.P.A., 942 F.2d 1427, 1431-32 (9th Cir.1991)). Based on this canon of construction, the TCPA language providing for treble damages only when the added element of intent is present suggests strongly to us that the TCPA provides compensation for "actual damages" caused by unfair or deceptive acts prohibited under § 47-108-104, even when intent is lacking. Thus, even a negligent misrepresentation in the sale of property may constitute a violation of the TCPA. See TENN.CODE ANN. § 47-18-104(a). For the reasons detailed in our discussion of the negligent misrepresentation claim, we reverse the district court's grant of summary judgment for all of the appellees, except Cooke, on the TCPA claim.
 
 
 49
 G. INFLICTION OF EMOTIONAL DISTRESS OR OUTRAGEOUS CONDUCT
 
 
 50
 To sustain a claim of intentional infliction of emotional distress or outrageous conduct in Tennessee, the appellants must show
 
 
 51
 (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury.
 
 
 52
 Swallows v. Western Elec. Co., 543 S.W.2d 581, 582 (Tenn.1976). The Supreme Court of Tennessee elaborated on this standard in Goldfarb v. Baker, 547 S.W.2d 567, 569 (Tenn.1977), stating:
 
 
 53
 that the defendant's conduct must be so outrageous in character and extreme in degree as to be beyond the pale of decency and that it must have caused serious mental injury to the plaintiff. The conduct must be "atrocious," "utterly intolerable," and "beyond all bounds of decency."
 
 
 54
 Id.
 
 
 55
 The appellants argue that if this court determines their "negligent misrepresentation count may proceed to trial," we must allow their emotional distress and outrageous conduct claim to proceed to trial because "[o]nly a jury can analyze this question of fact." Appellants' Br. at 30-31. The Supreme Court of Tennessee, however, has clearly held that "the court has the burden of determining, in the first instance, whether [a defendant's] conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Swallows, 543 S.W.2d at 583 (discussing dismissal on the pleadings); see also Claiborne v. Frito-Lay, Inc., 718 F.Supp. 1319, 1322 (E.D.Tenn.1989) (discussing dismissal on summary judgment).
 
 
 56
 The appellants' evidence provides no support for their claim that the actions, or failure to act, by any of the defendants in this case other than possibly Don Williams and his now-deceased wife Alice, rise to the level of "outrageousness" required to support a claim of infliction of emotional distress or outrageous conduct in Tennessee. The mere fact that plaintiffs can produce evidence to survive a motion for summary judgment on a claim of negligent misrepresentation does not automatically save their emotional distress claim. The judgment of the district court on this count is affirmed.
 
 
 57
 The appellants also raised a claim of negligent infliction of emotional distress in their original complaint. The appellants have made no specific mention of this claim in their appeal to this court or in their motion in opposition to summary judgment in the district court. Even if the appellants have not waived this claim on appeal, they cannot prevail. To sustain a claim of negligent infliction of emotional distress in Tennessee, a plaintiff must first present material evidence sufficient to support a general claim of negligence. See Camper v. Minor, 915 S.W.2d 437, 446 (Tenn.1996). In addition, to protect against "trivial or fraudulent actions," Tennessee allows for "recovery only for 'serious' or 'severe' emotional injur[ies]." Id. "A 'serious' or 'severe' emotional injury occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Id. (quotations omitted). The appellants have not presented any material evidence suggesting that injury, if proximately caused by the appellees' actions, was so severe as to cause a reasonable person to be unable adequately to cope with the mental stress. For this reason, the dismissal of the negligent infliction of emotional distress claim is affirmed.
 
 H. BREACH OF CONTRACT--BREACH OF WARRANTY
 
 58
 The appellants admit that their claims for breach of contract and breach of warranty are "essentially the same as that made for the fraud and negligent misrepresentation claims." Appellants' Br. at 31 (quoting Menuskin, 940 F.Supp. at 1218). There is no evidence, however, that National Title or Sartain agreed to a contract between themselves and the appellants. The appellants also argue in the alternative that, even if no contractual relationship existed, "National Title and Sartain are still liable for contributing to and inducing the breach of the contract between plaintiffs and DWCC." Appellants' Br. at 31.
 
 
 59
 Additionally, courts in Tennessee have previously dealt with the issue of when a claim based on misrepresentation or fraud on the contract may be brought in real property cases. The plaintiffs in Winstead v. First Tennessee Bank N.A., Memphis, 709 S.W.2d 627 (Tenn.Ct.App.1986), purchased property believing that it could be used for commercial purposes. They then sued their attorney, their real estate agent, the vendor, the owner who had sold her interest to the vendor, and the vendor's attorney after they discovered that they could not use the property for commercial purposes. Although the case against their attorney was dismissed by consent order, the court held that:
 
 
 60
 [I]f a purchaser of real property has notice or with ordinary diligence should have had notice of a problem with the real estate, the purchaser cannot attack the validity of the contract for fraud, misrepresentation, or concealment of that problem.
 
 
 61
 Winstead, 709 S.W.2d at 631 (noting the information in question was "available and accessible to all parties").
 
 
 62
 The court's decision in Winstead was based in part on the Tennessee Supreme Court holding in Hall v. Hall, 604 S.W.2d 851 (Tenn.1980), which held that purchasers of real property are:
 
 
 63
 "[c]hargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deed or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient [sic] contained in any deed or record, which a prudent person ought to examine, to produce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the fact so contained."
 
 
 64
 Id. at 853 (quoting Teague v. Sowder, 121 Tenn. 132, 114 S.W. 484, 489 (1908) (quotation omitted in original)); see also Winstead, 709 S.W.2d at 632; Tennessee v. Cox, 840 S.W.2d 357, 366 (Tenn.Ct.App.1991) (citing Teague, 114 S.W. at 489) ("A purchaser of land is charged with notice as to recital of the deeds in the chain of title and of every fact which, with reasonable prudence or diligence, he ought to become acquainted.").
 
 
 65
 As in Winstead, the information the appellants in the instant case needed was available and accessible to them. Section 66-26-102 of the Tennessee Code Annotated states that properly registered instruments are "notice to all the world from the time they are noted for registration...." The plaintiffs could have simply performed their own title search to discover if the titles were encumbered, but they instead chose to rely on the assurances of DWCC. This cannot be blamed on National Title or Sartain who appear to have had no knowledge of DWCC's assurances or Don Williams's illegal actions. Because there is no evidence that National Title or Sartain were contracting with the appellants to perform any service, let alone a title search, under these circumstances appellants cannot attack the validity of the contract for fraud or misrepresentation. See Winstead, 709 S.W.2d at 631.
 
 
 66
 Additionally, even if a negligent misrepresentation had been made by the appellees, the contractual remedy for a misrepresentation by a third-party is to make the contract voidable by the recipient of the misrepresentation. See RESTATEMENT (SECOND) OF CONTRACTS § 164 (1981). The appellants argue that the appellees should be liable on the contract because rescission would not make them whole. See Appellants' Br. at 33. While rescission might not be an adequate remedy under the circumstances here, appellants cite no authority for any other remedy in contract; the remedy they are searching for may be available under these circumstances in tort, but not in contract. Cf. RESTATEMENT (SECOND) OF CONTRACTS at 424-25 (Introductory Note).
 
 
 67
 To the extent that the appellants attempt to hold the appellees liable on the contract based on the appellees' status as agents of DWCC, their claim also lacks sufficient support. Under Tennessee law, a known agent is bound by the contracts of his or her principal only when the "circumstances show that the agent intended to be bound or assumed the obligations under the contract." Holt v. American Progressive Life Ins. Co., 731 S.W.2d 923, 925 (Tenn.Ct.App.1987). The appellants have not put forth sufficient evidence to demonstrate that any of the appellees intended to be bound personally under the appellants' contracts with DWCC. They were at all times simply acting in their capacity as known agents. The district judge properly granted summary judgment on the breach of contract and breach of warranty claims.
 
 I. CIVIL CONSPIRACY
 
 68
 Appellants claim that the appellees were aware of and participated in the concealment of "the fraudulent acts committed by the various members of the Williams Enterprise." J.A. at 31 (Compl. at 11). Tennessee courts define the elements of the claim for civil conspiracy as follows:
 
 
 69
 A civil conspiracy is a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means. The requisite elements of the cause of action are common design, concert of action, and an overt act. Injury to person or property, resulting in attendant damage, must also exist.
 
 
 70
 Braswell v. Carothers, 863 S.W.2d 722, 727 (Tenn.Ct.App.1993) (quotations and citations omitted). The appellants rely on similarities between their case and Braswell to support their civil conspiracy claim. However, although the court in Braswell concluded that the allegations in the complaint stated a claim for civil conspiracy, the court also concluded that summary judgment should be granted to the defendants because the plaintiffs failed to present any evidence of a common design or concert of actions among the alleged conspirators. We conclude, as the Court of Appeals of Tennessee did in Braswell, 863 S.W.2d at 729, that evidence of these elements of the civil conspiracy claim is lacking, and we affirm the district court's grant of summary judgment for the defendants on this claim. Plaintiffs have not provided evidence to demonstrate that National Title, Sartain, Cooke, Miles, or Parker participated in combination with Don Williams or his wife in a common design to defraud the appellants of their property or otherwise cause harm to them or their property.
 
 III. CONCLUSION
 
 71
 Based on the foregoing reasons, we AFFIRM the district court's grant of summary judgment for appellee Cooke on all claims and for all of the other appellees on the claims of fraud, gross negligence, infliction of emotional distress or outrageous conduct, breach of contract and breach of warranty, and civil conspiracy. We also AFFIRM the district court's grant of summary judgment for appellees National Title and Sartain on the simple negligence claim. We REVERSE the district court's grant of summary judgment for appellees Parker and Miles on the simple negligence claim, and we REVERSE the district court's grant of summary judgment for all appellees, except Cooke, on the negligent misrepresentation and TCPA claims. We remand this case to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The appellants' claims against Don Williams's wife, Alice Williams, were dismissed without prejudice pursuant to FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2), as she died during the course of the proceedings below
 
 
 [2]
 The appellants originally filed their claims in Tennessee state court, and one of their original claims included an alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. The defendants below removed the case to federal district court which exercised supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. The district court's grant of summary judgment on the RICO claim was not raised on appeal by the appellants
 
 
 [3]
 This court finds persuasive Collins v. Binkley, 750 S.W.2d 737 (Tenn.1988), where the defendant attorney was asked by a seller of real property to prepare the warranty deeds necessary to convey title. The defendant prepared the deeds but they lacked a complete acknowledgment and this rendered the deeds invalid for recording. Despite the fact that there was no privity of contract between the plaintiffs-purchasers and the defendant, the court held that "there was evidence that the attorney knew that plaintiffs would rely upon him and that it was his professional responsibility to prepare a valid warranty deed ... and that plaintiffs would suffer loss if the acknowledgment was defective." Id. at 739. This fact, combined with "evidence that the omission in the acknowledgment was below the standard of care required of an attorney preparing instruments for conveyance of real property," led the court to hold that a jury should determine if § 552 applied. See id
 
 
 [4]
 We note in passing that because of the procedural history of this case, neither the district court nor any of the parties in this appeal have fully briefed the issue of whether certain claims by specific appellants should be dismissed as to specific appellees where there is no allegation that any communication took place between these particular individuals. For example, if there is not sufficient evidence to prove that appellee Miles ever communicated with a particular appellant, then the district court is still free to dismiss any claim against Miles brought by that appellant. We leave to the district court the task of sorting through these factual details if they are argued on remand
 
 
 [5]
 Although Stinson primarily deals with negligent misrepresentation, it does provide some instruction as to when a duty is owed under simple negligence